UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | |
|---|---|
| NELLIE K. JACKSON ) | |
| ) | |
| v.    ) | NO. 2:04-CV-372 |
| ) | |
| JO ANNE B. BARNHARDT, ) | |
| Commissioner of Social Security ) | |

## MEMORANDUM OPINION

The plaintiff Nellie K. Jackson has filed a motion for a judgment on the pleadings on her complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt to deny her application for disability insurance benefits under the Social Security Act. The defendant has filed a motion for summary judgment.

Ms. Jackson was born in 1954 and was 49 years old at the time of her administrative hearing. [Tr. 33]. She completed ninth grade and has relevant past work experience as stocker, laundry worker, cashier, and childcare worker. [Tr. 15, 56]. Ms. Jackson alleges she was disabled from October 2, 1995, through September 30, 1996, from back surgeries, pain in her hips, and nerve damage. [Tr. 38]. Because the objective medical evidence did not establish a medically determinable impairment

that supported Ms. Jackson's allegations of pain, the Administrative Law Judge [ALJ] found that she was not disabled as defined by the Social Security Act during that time period. [Tr. 14 ].

In September 1994, Ms. Jackson underwent a spinal fusion on her back. [Tr. 178-79]. After staying in the hospital for five days, Ms. Jackson was discharged with instructions to walk for exercise and not to lift more than 15 pounds. [Tr. 174].

In October 1994, Dr. Daniel Dickerson reported Ms. Jackson was without pain for the first time "since about three weeks after her first surgery."[1] [Tr. 95]. By January 1995, her back was "doing a lot better," and she was planning to return to work in March 1995. [*Id.*]. The doctor remarked this was the, "[f]irst time she hadn't been in constant pain for a long time and I am very grateful for her." [*Id.*].

Although she was not scheduled to see Dr. Dickerson again for a year, Ms. Jackson made another appointment for March 1995 because of complaints of shoulder pain on her right side. [Tr. 94]. The doctor injected her twice near her shoulder muscles and reported that "she obtained quite a bit of relief here in the office." [*Id.*]. In April 1995, Ms. Jackson reported pain and swelling in her right hand. [*Id.*]. X-rays of the area were negative, and the doctor prescribed medication for the pain.

---

[1] Ms. Jackson testified at her administrative hearing that she underwent surgeries in 1988 and 1992. [Tr. 206-07]. It is unclear to which surgery the doctor is referring.

[*Id*.].

In November 1995, Ms. Jackson presented to Dr. Dickerson's office (but she did not see him) with pain in her left shoulder. [Tr. 93]. She was given another injection. [*Id*.]. In January and May 1996, she still had the same pain and received additional injections. [Tr. 92-93]. At the May 1996 visit, Ms. Jackson was encouraged to gradually increase her activity level. [Tr. 92]. In July 1996, Ms. Jackson was "[r]eally not having any problems in her lower back," but she was experiencing pain in the joints all over her body. [*Id*.]. Examination failed to show any inflammation in her joints. [*Id*.].

In August 1996, Ms. Jackson complained of pain in her right hand and wrist. [Tr. 91]. The doctor noted migratory arthritis and believed Ms. Jackson had either gout or pseudogout. [*Id*.]. Another injection was given. [*Id*.]. That same month, Ms. Jackson returned for a follow-up appointment and was noted as having improved some since her last injection and medication change. [*Id*.]. In September 1996, Dr. Dickerson referred her to Dr. Ken Bell for an evaluation. [*Id*.].

Ms. Jackson was evaluated by Dr. Bell in October 1996. [Tr. 184-86]. She complained of swelling, joint pain, stiffness, and redness. [Tr. 186]. Dr. Bell described her as an active individual who takes walks in the woods. [*Id*.]. Ms. Jackson stated she received excellent benefits from her surgeries. [*Id*.]. The doctor

3

assessed her with palindromic arthritis, changed her medication, and suggested a carpal tunnel wrist splint. [Tr. 184]. By November 1996, Ms. Jackson was "doing better" with her new medication. [Tr. 182]. An x-ray of her hand, however, showed "a lucent change over the distal shaft of the 5th metacarpal." [*Id*.]. Ms. Jackson was referred to Dr. Mark Griffith for this change, and Dr. Griffith removed lesions from Ms. Jackson's finger in late November 1996. [Tr. 182, 187-88].

At Ms. Jackson's administrative hearing held on May 18, 2004, her testimony was received into evidence. [Tr. 205-11]. She testified she has tried to work a few jobs since October 2, 1995, but she does not last more than three days because she has excruciating pain in her back which runs down her legs. [Tr. 205-06]. Ms. Jackson had her first surgery in 1988 when she had a ruptured disc repaired. [Tr. 206]. In 1992, she had another ruptured disc repaired. [Tr. 206-07]. In 1994, she underwent a bone fusion. [Tr. 207]. Ms. Jackson testified she was "flat on [her] back for six months from the bone fusion." [*Id*.]. She was unable to return to work following the surgery. [*Id*.]. Ms. Jackson also has pain in her right shoulder and arm. [Tr. 208]. In addition, she often has swelling in her hands that has been diagnosed as rheumatism. [Tr. 210].

The ALJ ruled that Ms. Jackson was not disabled because the medical evidence did not support her allegations of pain for the time period in question. [Tr. 14]. She

4

did have "impairments involving the lumbar spine, right shoulder, and right wrist and hand," but she "retained the residual functional capacity to perform the full range of sedentary work." [*Id.*].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Ms. Jackson requests a judgment on the pleadings and challenges the ALJ's finding that she could perform a full range of sedentary work, the use of the *Medical-Vocational Guidelines* to find her not disabled, and the ALJ's evaluation of her subjective allegations of pain.

Ms. Jackson first claims the ALJ erred by finding that she could perform a full range of sedentary work. Following back surgery in September 1994, Ms. Jackson

5

was told to refrain from lifting more than 15 pounds. [Tr. 174]. No other limitations regarding standing or sitting were prescribed, and Ms. Jackson was encouraged to walk. [*Id*.]. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §404.1567(a). The objective medical evidence indicates Ms. Jackson could perform sedentary work. Therefore, the ALJ had substantial evidence to make his determination.

Ms. Jackson next asserts the ALJ erred in his use of the *Medical-Vocational Guidelines* to find that she was not disabled. Ms. Jackson claims this was in error because one of the components was finding that she could perform a full range of sedentary work. As detailed above, however, the ALJ's finding that she could perform sedentary work was based on substantial evidence. As such, Ms. Jackson's second assertion of error must fail.

Lastly, Ms. Jackson claims the ALJ erred in his evaluation of her subjective allegations of pain. The ALJ found that Ms. Jackson did not have a medically determinable impairment during the time period in question that "could have reasonably been excepted to produce her alleged pain or other symptoms." [Tr. 15].

Ms. Jackson testified at her administrative hearing to having excruciating back pain. [Tr. 206]. However, at follow-up appointments after her surgeries, doctors noted she did not have back pain and was finally back pain-free. [Tr. 91, 95]. In addition, Ms. Jackson testified that following her surgery in 1994, she laid flat on her back for six months. However, in her hospital discharge notes, the doctor indicated she should walk for exercise and not lift more than 15 pounds. [Tr. 174]. No medical evidence or record indicates Ms. Jackson was so immobile following the surgery. Ultimately, however, this court will note that it is not within its purview to revisit issues of credibility. *Walters*, 127 F.3d at 528.

Accordingly, Ms. Jackson's motion for a judgment on the pleadings will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

       s/Thomas Gray Hull
THOMAS GRAY HULL
  SENIOR U. S. DISTRICT JUDGE

7

Case 2:04-cv-00372   Document 11   Filed 04/25/05   Page 7 of 7   PageID #: 16